Not for Publication

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | **Criminal No. 18-0450 (ES)** |
| v. | **OPINION** |
| **WILLIAM LEVERSON,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant William Leverson's ("Defendant") motion for compassionate release. (D.E. Nos. 17 & 25 (collectively, "Motion")). The Government opposes the Motion. (D.E. No. 57). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES the Motion.

**I.     BACKGROUND**

On October 30, 2018, Defendant pled guilty to being a felon in possession of a firearm, contrary to 18 U.S.C. § 922(g)(1). (D.E. No. 8; D.E. No. 9 at 1; D.E. No. 10 at 1). On February 11, 2019, the Court sentenced Defendant to a term of 60 months of imprisonment to be followed by three years of supervised release. (D.E. Nos. 14–15).

Following Defendant's *pro se* submission for compassionate release in early 2021 (D.E. No.17), counsel filed a supplemental motion for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA") (D.E. No. 25 ("Def. Supp.")), which the Government opposed. (D.E. No. 27 ("Gov. Opp.")). Defendant is under the custody of the

Bureau of Prisons ("BOP") and incarcerated at the United States Penitentiary Canaan ("USP Canaan") in Pennsylvania. *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 31, 2021) (BOP Registration Number 71753-050). Defendant's scheduled release date is October 17, 2022. *Id.*

In his Motion for compassionate release, Defendant contends that his need for drug rehabilitation, asthma, and the COVID-19 pandemic collectively provide extraordinary and compelling reasons for his release under the FSA. (Def. Supp. at 2–4).

**II.    LEGAL STANDARDS**

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>>
>> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Defendants bear the burden to demonstrate that they are entitled to a sentence reduction by satisfying procedural perquisites and showing extraordinary and compelling circumstances. *See, e.g.*, *United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). In

2

addition, the Court must find that "the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020).

## III. ANALYSIS

### A. Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet Section 3582(c)(1)(A)'s exhaustion requirement. Section 3582(c)(1)(A) requires either that that the defendant exhaust all administrative remedies, or that, after the submission of a request to the warden at a defendant's facility, thirty days have passed since the warden's receipt of such a request. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Here, there is no dispute that Defendant has satisfied this exhaustion requirement by submitting a request for a reduced sentence to the warden at USP Canaan, which was denied. (D.E. No. 17 ("Def. Mov. Br.") at 38; Def. Supp. at 2; *see* Gov. Opp. at 1).[1] Thus, the Court will turn to the Motion's merits.

### B. Extraordinary and Compelling Circumstances

Before Congress passed the FSA, it directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific extraordinary and compelling reasons that a court may consider "[u]pon motion of the Director of the [BOP]" under § 3582(c)(1)(A) including: (i) medical conditions, (ii) complications from old age, and (iii) certain familial challenges. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). One of those circumstances is potentially relevant here: a terminal illness or a serious

---

[1] All pin citations to Docket Entry Numbers 17 and 29 are to the pagination automatically generated by the Court's CM/ECF system.

medical condition that substantially diminishes the defendant's ability to provide self-care in a correctional facility and from which he or she is not expected to recover. *See id.*, Application Note 1(A). In addition, the policy statement includes a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

Because the Sentencing Commission's policy statement was issued before Section 3582(c) was amended by the FSA to allow defendants to file motions for compassionate release, the policy statement pertains only to motions filed by the Director of BOP. *See generally* U.S.S.G. § 1B1.13. As a result, courts have debated whether, when faced with defendant-filed motions for compassionate release, they may independently determine what constitutes extraordinary and compelling circumstances or if they are confined to the specific circumstances enumerated in the policy statement. *Compare United States v. Brooker*, 976 F.3d 228, 235–37 (2nd Cir. 2020), *and United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."), *with United States v. Bryant*, 996 F.3d 1243, 1264 (11th Cir. 2021) ("[T]he FSA did not give courts the freedom to define 'extraordinary and compelling reasons.' It expanded access to the courts for adjudicating motions under existing criteria."). Recently, the Third Circuit has aligned with the majority on this issue, holding that the policy statement, by its plain language, applies to Bureau-initiated motions and is thus "not applicable—and not binding—for courts considering prisoner-initiated motions." *United States v. Andrews*, ___ F.4th ___, 2021 WL 3852617, at *3 (3d Cir. Aug. 30, 2021) (citing the Second, Fourth, Fifth, Sixth, Seventh, Tenth, and District of Columbia circuit courts holding the same).

Based on the foregoing, the Court does not constrain itself to the Sentencing Commission's policy statement. The Court will, however, refer to the policy statement for guidance, *see Andrews*, 2021 WL 3852617, at *4, and consider the body of caselaw addressing extraordinary and compelling circumstances in the wake of defendant-initiated motions for compassionate release based on COVID-19. On the latter score, courts consistently consider two components: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-0101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020). Thus, the Court begins by examining the COVID-19-related conditions at Defendant's place of incarceration, USP Canaan.

      i.    **USP Canaan**

Defendant is incarcerated at USP Canaan, a high security penitentiary with a minimum security satellite camp. *See USP Canaan*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/caa/ (last visited Aug. 31, 2021). The facility houses a total of 1,245 inmates. *Id.* Since the onset of the pandemic, USP Canaan has had 281 inmates and 76 staff members test positive for and recover from COVID-19. *See COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 31, 2021). Currently, the facility has one inmate and one staff members infected with COVID-19. *Id.* Despite any prior surge of positive COVID-19 cases at USP Canaan, it appears that, at present, the facility is combating the spread COVID-19 effectively.

      ii.    **Medical Conditions**

When faced with compassionate release motions founded on COVID-19 concerns, courts

5

have referred to certain lists published by the Centers for Disease Control ("CDC") as guideposts for evaluating medical conditions that exacerbate COVID-19 illness. *See e.g.*, *United States v. Dent*, No. 18-20483, 2020 WL 4783921, at *3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v. Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (same). Currently, the CDC identifies various medical conditions which can make individuals "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021) (last visited Aug. 31, 2021) ("CDC Medical Conditions List").

At this juncture, Defendant's purported asthma does not amount to an extraordinary and compelling reason to justify early release. Although moderate to severe asthma is on the CDC's list of medical conditions that can make the Defendant "more likely to get severely ill from COVID-19," *see* CDC Medical Conditions List, he does not indicate whether his asthma is moderate to severe, nor does Defendant provide the Court with medical documentation to substantiate an asthma diagnosis or treatment. (*See generally* Def. Supp.). Indeed, Defendant's BOP medical records, submitted by the Government, do not reflect any issues with respect to asthma or difficulty breathing. (*See generally* D.E. No. 29). Rather, Defendant's medical notes indicate that he repeatedly denied having shortness of breath both before and after the COVID-19 pandemic arose. (*Id.* at 8, 25, 32 & 48). Moreover, Defendant already contracted and recovered from COVID-19 without respiratory symptoms. (*Id.* at 5 (noting that Defendant denied coughing); *see* Def. Supp. at 3).

For these reasons, Defendant fails to present an extraordinary and compelling medical

reason for a sentence reduction.[2] *See, e.g.*, *United States v. Wall*, No. 16-533, 2021 WL 822803, at *4 (D.N.J. Mar. 4, 2021) (denying compassionate release where an inmate failed to present "sufficient evidence that he currently suffers from asthma") (citing *United States v. Coles*, 455 F. Supp. 3d 419, 425 (E.D. Mich. 2020)); *see also United States v. Williams*, No. 17-341, 2021 WL 2374390, at *5 (D.N.J. June 10, 2021) (finding that defendant failed to meet his burden to establish extraordinary and compelling reasons for release notwithstanding his documented asthma because it was "well-controlled" and he had already contracted and recovered from COVID-19 without "any serious effects"); *United States v. Govil*, No. 18-607, 2020 WL 2992162, at *2 (D.N.J. June 4, 2020) (denying an asthmatic inmate's motion for compassionate release, noting "that multiple courts have denied release to older inmates and asthmatic inmates despite the risk of COVID-19").

Although Defendant does not pass the initial threshold of demonstrating extraordinary and compelling reasons for a sentence reduction,[3] the Court nonetheless discusses the applicable Section 3553(a) factors. *See* 18 U.S.C. 3553(a). An analysis of those factors also weighs against a sentence reduction.

---

[2] The Court's conclusion is independent of the fact that Defendant received one of the three available COVID-19 vaccines (Def. Supp. at 3; D.E. No. 29 at 13), each of which has proven to be highly effective at preventing COVID-19 illness in persons who have been fully inoculated. *See Different COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines.html (last updated Aug. 19, 2021) (last visited Aug. 31, 2021).

[3] For the reasons stated in Section III.C of this Opinion, the Court also declines to find that extraordinary and compelling reasons exist by virtue of the sentence imposed.

Furthermore, to the extent Defendant argues that his failure to qualify for a specific BOP program amounts to extraordinary and compelling circumstances for his release (*see* Def. Supp. at 3–4), this contention is unwarranted. Regardless of the circumstances, because rehabilitative programming is never guaranteed, the inability to participate does not amount to extraordinary and compelling reasons to justify release. *See, e.g.*, *United States v. Sobrado*, No. 18-615-1, 2021 WL 2328143, at *3 (D.N.J. June 7, 2021) (commenting that "participation in the [Residential Drug Abuse Program] is not a right but an opportunity that is denied federal inmates for a variety of reasons nor is success in the program guaranteed"); *see also United States v. Carrera*, No. 14-367-B-40, 2021 WL 1966848, at *3 (N.D. Tex. May 17, 2021) (finding release unwarranted even if rehabilitative programming was unavailable at defendant's facility). Moreover, as noted in counsel's supplemental submission, Defendant has benefited from at least some rehabilitative programming while incarcerated. (Supp. at 4–5 (noting that Defendant "was able to fulfill many of the Court's recommendations" which "was quite remarkable given the COVID-19 restrictions in place at USP Canaan")).

### C.     Section 3553(a) Factors

Section 3553(a) directs the Court to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing; *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(D). Additionally, the Court must consider, *inter alia*, the nature and circumstances of the offense and the defendant's history and characteristics. *Id.* § 3553(a)(1).

As noted above, on February 11, 2019, the Court sentenced Defendant to a term of 60 months of imprisonment to be followed by three years of supervised release. (D.E. No. 14). The Court adhered to the parties' stipulated sentencing guidelines range, which provided anywhere from 57 to 71 months of imprisonment with supervised release from one to three years, and calculated Defendant's criminal history category at IV. (D.E. No. 16 ("Sent. Tr.") at 48:15–49:20). Furthermore, the record reflects that the parties stipulated range "significantly . . . benefit[ted] the [D]efendant." (*Id.* at 20:15–19).

In imposing a sentence of 60 months, the Court considered the very serious nature of the crime Defendant committed. Specifically, the Court described the offense as outlined in the presentence report, which indicated that Defendant robbed an individual at gunpoint around 1:30 A.M., after Defendant witnessed the victim withdraw cash from an ATM. (*Id.* at 24:23–25:12). Defendant demanded that the victim "[e]mpty [his] pockets" or Defendant would shoot him. (*Id.* at 25:10–12). Defendant's gun—a semiautomatic pistol—was loaded. (*Id.* at 25:25–26:2). In recounting the robbery, the Court noted that this conduct did not amount to a "classic [Section] 922(g) case" in which a felon is apprehended and "happens to have a gun." (*Id.* at 26:8–10). Moreover, the Court cited Defendant's active criminal history dating back to age fourteen. (*Id.* at

8

26:2–5 (recounting at least three separate thefts or robberies Defendant committed at ages fourteen, seventeen, and nineteen); *id.* at 26:14–27:7 (noting a violent robbery Defendant committed at age twenty-three in which he followed a victim home, brandished a knife at the victim's stomach, and demanded the victim's belongings)). Overall, the Court made clear that Defendant's criminal conduct was "escalating." (*Id.* at 14:6–8).

In addition, the Court considered the need to promote respect for the law and to provide just punishment. On this score, the Court stated that it was not clear whether Defendant understands or respects the law, particularly in light of Defendant's criminal history and the fact that he has resisted arrest. (*Id.* at 28:4–6 & 29:13). With respect to deterrence, the Court stated that the sentence imposed would address both general and specific deterrence. (*Id.* at 31:11–12). The Court also paused to note areas of concern in which the Defendant could improve, such as impulse control and anger management. (*Id.* at 29:1–6). As to Defendant's history and characteristics, the Court noted that "they are tragic," specifically his mental, emotional, and familial struggles as well as his substance abuse. (*Id.* at 32:11–33:4). The Court stressed that Defendant's drug addiction likely perpetuated his criminal conduct. (*See, e.g.*, *id.* at 34:5–8).

First, Defendant argues that his rehabilitative efforts while incarcerated demonstrate that he does not pose a danger to the community and support his request for release under the Section 3553(a) factors. (Def. Supp. at 4–5). However, even crediting Defendant's participation in therapeutic and intellectually stimulating programs, to reduce Defendant's sentence now would undermine the important factors that the Court considered at sentencing, which remain true today: namely, the seriousness of the offense, the need to promote respect for the law, and necessity for specific and general deterrence. To this end, Defendant acknowledges that his disciplinary record while incarcerated is not clean; he received one infraction for exhibiting inappropriate sexual

9

behavior while speaking with a visitor. (*See* Def. Supp. at 4; *see also* D.E. No. 29 at 110). Although Defendant attempts to downplay his disciplinary fraction as "minor" (*see* Def. Supp. at 4), it nonetheless demonstrates his continued inability to display respect for others and adhere to the rules governing his correctional institution. (*See* D.E. No. 29 at 110). As such, Defendant's infraction does not reflect a sincere rehabilitative effort. (*See id.*). In addition, Defendant's scheduled release date is approximately 14 months away, which amounts to almost 25% of his 60-month sentence. *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 31, 2021) (BOP Registration Number 71753-050); *see also United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (holding that the time remaining on a defendant's sentence may inform whether immediate release would be consistent with the Section 3553(a) factors).

Second, Defendant maintains that his need for drug rehabilitation supports his request for compassionate release. (Def. Supp. at 3–5). More specifically, Defendant argues that his sentence was increased from 58 to 60 months solely to maximize his chance of acceptance into the BOP's Bureau Rehabilitation and Values Enhancement ("BRAVE") program, which he ultimately did not qualify for because of a state parole violation. (*Id.*; Sent. Tr. at 42:2–6). Defendant's *pro se* submission cites to *United States v. Tapia*, 564 U.S. 319, 334–35 (2011), which held that a court may not impose or increase a sentence to ensure receipt of certain rehabilitative services. (Def. Mov. Br. at 19). As such, Defendant maintains that the two-month increase amounted to an abuse of the Court's discretion (*id.*), and that early release will allow him to seek rehabilitation in a program that is comparable to BRAVE upon his return to New Jersey state custody. (Def. Supp. at 5).

The Court is not persuaded by Defendant's arguments. Here, Defense counsel's explicit

statements during sentencing are significant because they reflect that any purported error was invited and therefore waived. Counsel stated that "[i]t would mean nothing today, it would mean zero today if [the Court] gave [Defendant] 57 months and nothing changed in his life. If [the Court] gave [Defendant] 71 months today, and he got the help that he needed, while he was in prison, and that was productive time, then that's a home run . . . . that's everything." (Sent. Tr. at 17:17–22). Counsel continued, noting that despite Defendant's ineligibility for one specific rehabilitative program, that "there's other programs. . . . [t]hat's what we're here for. That's what we want." (*Id.* at 18:9–11). Consequently, the Court imposed a two-month increase consistent with Defendant's position at sentencing and within the parties' stipulated sentencing range. Thus, even if Defendant artfully attempts to correct a potential sentencing error through a motion for compassionate release, it appears that counsel elicited the error and waived it. *See United States v. Chacon*, 800 F. App'x 638, 641–42 (10th Cir. 2020) (holding, in the context of an alleged *Tapia* error that "because [defendant] received the sentence he requested, if there was any error, it was invited and therefore waived"); *United States v. Calloway*, 571 F. App'x 131, 135 (3d Cir. 2014) (holding that because defendant "submitted a joint request . . . proposing the exact [jury] instructions that the District Court used at trial[] [h]e thus cannot escape the invited error doctrine by arguing that he merely acquiesced to instructions proposed by the Government or the court") (citing *United States v. Ozcelik*, 527 F.3d 88, 97 n.6 (3d Cir. 2008)); *cf. United States v. Kopp*, 922 F.3d 337, 341 (7th Cir. 2019) (finding no waiver to challenge the court's sentence, which included a two-month increase from 18 to 20 months' imprisonment for rehabilitative purposes, where counsel made clear that defendant's position was for "the least amount of incarceration" and that 9 months' imprisonment would be sufficient).[4]

---

[4] Moreover, Defendant waived his right to appeal if the Court sentenced him within the agreed upon range set forth in Defendant's plea agreement. (*See* Sent. Tr. at 42:7–10; D.E. No. 9 at 3 & 9 (noting that Defendant "voluntarily

Thus, even if the Court exercised its discretion to find an extraordinary and compelling reason for a sentence reduction, the Section 3553(a) factors act as an independent bar to Defendant's release for the reasons expressed above.[5]

### IV.  CONCLUSION

Accordingly, Defendant's Motion is DENIED.  An appropriate Order accompanies this Opinion.

Dated: September 2, 2021                                  /s/ *Esther Salas*_____
                                                          **Esther Salas, U.S.D.J.**

---

waives[] the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range")).  Defendant does not challenge the validity of his waiver or plea agreement in the instant motion for compassionate release.

[5]     The Sentencing Commission's policy statement directed courts to evaluate the movant's dangerousness in addition to the Section 3553(a) factors.  Because dangerousness overlaps with the Court's analysis of the Section 3553(a) factors, it has been considered in Section III.C of this Opinion and weighs against Defendant's immediate release.